**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

HARVEY J. LAMBERSON,

           Plaintiff,

vs.

           Case No. 08-CV-56-TLW

MICHAEL J. ASTRUE,
Commissioner,
Social Security Administration,

           Defendant.

**OPINION AND ORDER**

    Pursuant to 42 U.S.C. Section 405(g), Plaintiff appeals the final administrative decision denying Supplemental Security Income under Title XVI of the Social Security Act. Plaintiff asserts that: (1) the step three analysis of the Administrative Law Judge ("ALJ") was legally flawed and not supported by substantial evidence; and (2) the ALJ's determination of appellant's residual functional capacity was not supported by substantial evidence. In response, defendant filed Commissioner's Motion for Entry of a Judgment Reversing and Remanding for Further Administrative Proceedings [Dkt. # 20]. For the reasons discussed below, the Court grants defendants motion and reverses and remands for additional administrative proceedings.

**Summary of the Record**

    Plaintiff Harvey J. Lamberson was born on February 2, 1972. [R. 7]. He claims that he is unable to work due to mental retardation, a mood disorder, and social anxiety. [R. 165-72, 175-77, 196, 200, 212-36, 239-42, 246, 262-66, 268-72]. The record shows discrepancies in plaintiff's intelligence quotient (IQ) scores. For example, in May 1989, when plaintiff was 17 years of age, standardized testing revealed that plaintiff's scores were equivalent to scores between a first and third grade level in mathematics, reading comprehension and recognition and spelling. [R. 172].

In October 1989, plaintiff underwent an educational evaluation by the State Department of Education. Using a now outdated test, the evaluation determined that he had a verbal IQ of 74, a performance IQ of 71, and a full scale IQ of 72. In comments to the examination, examiner Nancy Parker noted verbal, performance, and full scale IQ scores of 75, 77, and 74 respectively.[1] Ms. Parker also noted that plaintiff's Woodcock-Johnson scores might more accurately represent his level of functioning and that he appeared to fall in the borderline range of intellectual functioning. [R. 168-69].

Plaintiff's next psychological evaluation occurred in March 2004, and was administered by Janet K. Dean, M.S. [R. 175-177]. In that evaluation, plaintiff stated that he was in special classes throughout high school and that he had completed auto body training in one year. Id. WAIS-III testing showed that plaintiff had a verbal IQ of 67, a performance IQ of 73, and a full scale IQ of 67. Based on the total evaluation, Ms. Dean concluded that plaintiff appeared to function in a mentally retarded range intellectually, academically and in adaptive behavior skills. [R. 177]. She also concluded that while plaintiff's reported work history appears far greater than most individuals of his intellectual and academic functioning, the test results and history appear consistent with a supported employment program. Id.

Plaintiff's next clinical evaluation occurred in June 2005, and was administered by Christy Spears-Scheidt, L.P.C. at the Associated Centers for Therapy. [R. 246]. Ms. Spears-Scheidt diagnosed plaintiff as having a GAF of 34 with possible major depression and intermittent explosive disorder. Id. In July 2005, plaintiff was examined by Dr. S. Scott Hanan, also at Associated Centers for Therapy. Dr. Hanan diagnosed plaintiff with mood disorder NOS and social anxiety disorder for

---

[1]The testing used to obtain these results is now outdated by WISC-IV testing.

2

which he prescribed Zoloft and the anticonvulsant Depakote. Dr. Hanan also expressed doubt as to Ms. Spears-Scheist's conclusion that plaintiff was mentally retarded and ordered further IQ testing. [R. 241-42]. Dr. Hanan noted unspecified mental retardation with a GAF[2] of 35 to 40. Id.

On September 23, 2005, medical consultant Dr. Janice B. Smith opined that plaintiff had "marked" limitations in performing detailed instructions and interacting with the general public; however, she concluded that plaintiff had the ability to complete a normal work day, and work week to week from a mental standpoint, and that he could adapt to a work setting. [R. 192-94]. On October 26, 2005, Dr. Hanan's diagnoses were mood disorder NOS, social anxiety disorder, and a probable Axis II (Mental Retardation) disorder. Id. In the following months, he observed that plaintiff reported various improvements. [R. 212-15, 271]. Based on these reported improvements, Dr.Hanan discontinued plaintiff's use of medication on March 29, 2006. [R. 270]. In October 2006, plaintiff returned to Dr. Hanan complaining of recurring depression and anger outbursts. Dr. Hanan then prescribed the anticonvulsant Lamictal. [R. 269].

Even though plaintiff has been diagnosed with mild retardation, plaintiff has a significant work history since graduation from high school. Plaintiff testified that between 2000-2007, he held various jobs, including dishwasher, trash collector, bus boy, Albertson's courtesy clerk and

---

[2]The Global Assessment of Functioning ("GAF") is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individuals overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). A GAF of 31 to 40 indicates some impairment in reality testing or communications or major impairment in several areas. Id. at 34. A GAF of 41-50 indicates serious symptoms or serious impairment in social, occupational or school functioning. Id. At plaintiff's disability hearing on August 1, 2007, Vocational Expert Michael Wiseman testified that a GAF of 40-50 equates to being unable to keep a job, serious impairment and social occupation and school functioning. [R. 313]. Mr. Wiseman opined that one could not work based on that assessment. Id.

custodian. Plaintiff successfully worked for Albertsons on a part-time basis for a year. [R. 283]. He testified that he had experienced no problems on that job. [R. 284]. His job with Albertsons terminated when the store closed. [R. 284]. Plaintiff testified that he enjoyed his job with Albertson's because they gave him special accommodations, allowing him to take breaks whenever he was not busy. [R. 284]. Plaintiff testified that his other jobs ranged in length from a couple weeks to a couple years. In 2002, plaintiff earned $12,138.00 working full time as a trash collector for the City of Broken Arrow. [R. 291]. Except for his job with Albertsons, on the other jobs he was either fired or quit work due to problems with anger management, or a disagreement on how the job should be performed. [R. 281-92]. Plaintiff testified that his inability to maintain steady work was because he has a very bad temper. [R. 283, 289, 293]. On March 16, 2004, plaintiff told an examiner that he had a lifetime work history of over one hundred jobs. [R. 175].

In 2004, he resided with his parents. At the hearing plaintiff testified that he was living away from his parent's home. [R.280]. Plaintiff applied for Vocational Rehabilitation services. However, he expressed concern that his application would interfere with him receiving an award of supplemental security income and that between the two he was more interested in receiving social security benefits than returning to work. [R. 175].

The record shows that plaintiff is receiving counseling and medication for anger management. There is also indication that if plaintiff maintained a regular treatment plan for anger management he would be capable of full time work. Plaintiff advised his therapist that he had lost many jobs due to emotional outbursts and that he wanted to address these issues because they were interfering with his ability to be employed. [R. 246]. Dr. Hanan diagnosed plaintiff with a "mood disorder" which he treated by prescribing Lamictal. Dr. Hanan reported that plaintiff "continues to

do well" on the medication, despite apparently taking the medication only half the time required. [R. 263]. On August 3, 2005, after taking Zoloft and Depakote, plaintiff reported feeling "a lot better." [R. 240]. In a residual functional capacity assessment conducted by Dr. Janice B. Smith, the examiner concluded:

> Claimant is able to understand, remember, and carry out simple, but not detailed tasks under routine supervision. He is able to complete a normal work day and work week from a mental standpoint, and he can adapt to a work setting. He cannot relate effectively to the general public, but he can relate superficially to coworkers and supervisors about work matters.

[R. 194].

## **Procedural History**

Plaintiff protectively filed his application for supplemental security income on June 14, 2005. [R. 15]. He alleged that he became disabled on June 22, 2004. [R. 15, 89]. Plaintiff's application was denied initially on September 29, 2005, [R. 15, 47-50] and his Request for Reconsideration was denied on March 22, 2006. [R. 15, 43-45]. He then requested a hearing before an ALJ on April 25, 2006. [R. 15, 39-42]. His request was granted and a hearing was held on June 28, 2007, in Tulsa, Oklahoma. [R. 273-315]. On August 1, 2007, ALJ Richard J. Kallsnick issued a decision finding that plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act and therefore not entitled to benefits. [R. 12-23]. On November 30, 2007, the Appeals Council denied plaintiff's request for review of the ALJ's decision. [R. 4-6]. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

Plaintiff filed the instant appeal on January 31, 2008. [Dkt. # 1]. In his opening brief, plaintiff raised two issues and requested remand for an award of benefits. [Dkt. # 19 at 18]. Rather than file a response brief, defendant claimed the record was insufficient for review and requested

remand for additional administrative findings pursuant to sentence four of Section 205(g) of the Social Security Act. [Dkt. # 20 at 1]. Plaintiff objects to remanding the case for additional proceedings. Thus, the issue for consideration is whether, upon remand, further administrative action is needed or whether payment of benefits is appropriate.

### Social Security Law and Standard of Review

It is within the Court's discretion to remand for further proceedings or remand for an immediate award of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006); Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). Factors that the Court can consider are the length of time the matter has been pending and whether, given the evidence, remanding for additional fact-finding would serve a useful purpose or merely result in further delay of the award of benefits. Salazar, 468 F.3d at 626.

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520. See also Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g)

is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10thCir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

This Court must also determine whether the Commissioner applied the correct legal standards. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standards or fails to clearly demonstrate reliance on the correct legal standards. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).

## The Administrative Law Judge's Decision

At step one, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since June 14, 2005. [R. 17]. At step two, the ALJ found that the plaintiff had the severe impairments of mild mental retardation and the mood disorder, NOS (20 CRF 416.920(c). [R. 17]. At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416 920(d), 416.925 and 416.926). [R. 17]. The ALJ then found

that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but listed a few nonexertional limitations. [R. 18]. The ALJ found that plaintiff is able to understand, remember and carry out simple, non-detailed, tasks under routine supervision, that he is able to complete a normal workday from a mental standpoint and can adapt to a work setting, and that he can relate superficially to co-workers and supervisors, but that he cannot relate effectively to the general public. [R. 18]. At step four, the ALJ determined that plaintiff was capable of performing past relevant work as a trash collector and dishwasher, which are jobs that require unskilled work at a medium to very heavy level of exertion. [R. 22]. As a result, the ALJ concluded that the plaintiff was not disabled under the Act from June 14, 2005 through the date of the decision. [R. 22-23].

As stated above, plaintiff raised two issues for review, arguing that the ALJ committed reversible error by (1) not supporting with substantial evidence his step three analysis; and (2) not supporting with substantial evidence his finding regarding plaintiff's residual functional capacity. [Dkt. # 19 at 9].

## **Discussion**

The plaintiff submits that his case should be remanded for the payment of benefits because the record establishes that plaintiff has met the benefit requirements under Listing 12.05 (Mental Retardation). [Dkt. # 19 at 18]. Defendant admits the findings entered by the ALJ are insufficient but requests remand for the ALJ to assess and apply the factors set forth in Listing 12.05. Specifically, defendant claims the ALJ should:

1. Resolve discrepancies in Plaintiff's intelligence quotient (IQ) scores and arrange for additional testing, if necessary.

2. Hold a hearing to receive additional testimony and exhibits including, if possible, school or other records addressing Plaintiff's mental functioning before age 22.

3. Determine whether Plaintiff's impairment meets the requirements of 20 C.F.R. pt. 404., Subpt. P, App. 1, Listing 12.05C.

[Dkt. # 20 at 2].

The Court agrees with defendant. Although this case has been pending since plaintiff protectively filed his initial application on June 13, 2005, the Court finds that remand for additional fact finding consistent with defendant's motion would serve a useful purpose. Although the ALJ entered detailed findings supporting his conclusion, he failed to address the factors set forth in Listing 12.05. The ALJ failed to choose and apply one of the measurement methods recognized and endorsed by one of the four major professional organizations dealing with mental retardation after he determined that plaintiff suffered from the severe impairments of mild mental retardation and mood disorder. In addition, listing 12.05(C) specifically requires that plaintiff show that he had: (1) a valid verbal, performance, or full scale IQ of 60 through 70, and (2) another significant physical or mental impairment affecting work functions. 20 C.F.R., Pt. 404, subpt.P. App. 1, 12.05(C). The listings specify that when verbal, performance, and full scale scores are provided by an IQ test, the ALJ must consider the lowest of the scores, id. §12.00 (D)(6)(c), and that the IQ assessment should be determined prior to plaintiff's 22nd birthday. Plaintiff bears the burden to prove that at least one of his severe impairments was diagnosed before he was 22 years old.

This matter is remanded with the specific instructions for the ALJ to enters findings and conclusions consistent with the requirements of listing 12.05(C) and to incorporate that determination, with supporting evidence, in evaluating plaintiff's RFC.

## **Conclusion**

The Commissioner's decision denying plaintiff's application for Supplemental Security Income is insufficient for this Court to conduct a proper review. Accordingly, the Court grants defendant's Commissioner's Motion for Entry of a Judgment Reversing and Remanding for Further Administrative Proceedings [Dkt. # 20] and reverses and remands the Commissioner's decision for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 27th day of August, 2009.

_____
T. Lane Wilson
United States Magistrate Judge